HILL HOMEOWNERS ASSOCIATION, A CORPORATION OF
THE STATE OF NEW JERSEY, RICHARD G. ENGLAND
AND LORRAINE ENGLAND, HUSBAND AND WIFE,
EUGENE BOYLE, JR. AND MARJORIE BOYLE, HUS-
BAND AND WIFE, DR. JOSEPH F. MORIARTY AND
MARGARET MORIARTY, HUSBAND AND WIFE, SALVA-
TORE LOMAURO AND JOSEPHINE LOMAURO, HUS-
BAND AND WIFE, AND JOYCE R. FURHMAN, PLAIN-
TIFFS-RESPONDENTS, v. GARDEN STATE HIGH RISE
CORPORATION, A CORPORATION OF THE STATE OF
N. J., BERNARD BLASENHEIM ASSOCIATES, A COR-
PORATION OF THE STATE OF NEW JERSEY, CITY
COUNCIL OF THE CITY OF PASSAIC, ELIAS DRAZIN
AS BUILDING INSPECTOR AND ZONING OFFICER OF
THE CITY OF PASSAIC AND HOUSING FINANCE
AGENCY OF THE STATE OF NEW JERSEY, DEFEND-
ANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 25, 1977—Decided April 28, 1977.

Before Judges MATTHEWS, SEIDMAN and HORN.

*Mr. Nicholas Martini* argued the cause for appellants (*Mr. Martini,* attorney for appellants Garden State High Rise Corporation and Bernard Blasenheim Associates; *Mr. Leonard M. Bitterman,* attorney for municipal appellants).

*Mr. Marvin A. Stern* argued the cause for respondents.

The opinion of the court was delivered by

SEIDMAN, J. A. D. The principal issue raised on this appeal is whether the Housing Co-operation Law, *N. J. S. A.* 55:14B–1 *et seq.* authorized the governing body of the City of Passaic to adopt a resolution rezoning and excepting from certain requirements of the local zoning ordinance a tract of land on which a limited-dividend housing corporation (*N. J. S. A.* 55:16–1 *et seq.*) proposed to construct a senior citizens housing project with financial assistance from the New Jersey Housing Finance Agency and upon its completion to contract with the housing authority of the municipality for the management of the project. Also involved is the validity of a companion resolution, the details of which appear below.

In a prerogative writ suit brought by a homeowners' association and individual property owners, the trial judge here set aside the resolution, and defendants, the owner

and developer of the proposed project, appealed.* For reasons which follow, we affirm the judgment insofar as it relates to the first resolution, and reverse and remand as to the second.

Garden State High Rise Corporation (Garden State) owns a tract of land situated at 236–248 Aycrigg Avenue in Passaic. It obtained a building permit in July 1973 for the construction of a high-rise "luxury" apartment building thereon. Plaintiffs in this case attacked the issuance of the permit in an earlier prerogative writ action. Judgment was entered in that matter in favor of the corporation and was affirmed on appeal. Garden State alleges that because of the resultant delay and changes in economic conditions, financing commitments were no longer available and it could not proceed with construction.

Accordingly, Garden State's attorney wrote a letter to the Passaic City Council in September 1975 advising of its desire to obtain approval for a senior citizens housing structure under the regulations of the New Jersey Housing Finance Agency and the Federal Department of Housing and Urban Development (HUD). Construction of the project was to be financed by the Housing Finance Agency, with housing assistance payments to be made by HUD for units under lease to eligible senior citizens. The city council was entreated to take prompt action in the form of "resolutions of need and acceptance as well as [tax] abatement," and also to adopt necessary resolutions amending the zoning ordinance and granting exceptions thereto with respect to parking spaces per unit, density and floor area ratio. Emphasis was placed on the fact that prospective tenants would come under the strict

---

*The New Jersey Housing Finance Agency is not involved in this appeal. It appears that at the time of the entry of summary judgment no answer had as yet been filed in its behalf. Furthermore, plaintiffs' complaint sought no particular relief against the Agency. The judgment, additionally, provides for a discontinuance of the action as it relates to the Agency.

control of the Housing Finance Agency and the Limited-Dividend Housing Law, and that "the owners would be limited to an annual return of only 8% on their actual investment in the project." The city council was further informed that the Passaic Housing Authority had agreed to manage the project and to screen and approve all tenants "in accordance with and subject to HUD approval and HUD regulations."

A public hearing on the proposal was held before the city council on October 2, 1975. At its conclusion two resolutions were adopted. The first, No. 1393–75, noted in its preamble the urgent need for such project in Passaic. It recited that the proposed senior citizens housing project would be a

> * * * limited divident [sic] project under the HFA statutes and regulations which provide that the owners of the property are limited to interest or dividend payments not exceeding 5% on the amount of actual investment in the project plus 3% to be held in escrow by the Agency for 10 years pursuant to HFA regulations.

The resolution next stated that the city council was acting under *N. J. S. A.* 55:14B–4 and 7 for the purpose "of aiding and cooperating in the planning, undertaking and construction or operation of housing or redevelopment projects * * * to plan or replan, zone or rezone or make exceptions from building regulations and ordinances and change its map * * *." It then made certain amendments of, changes in and exceptions from the local zoning ordinance to accommodate the project. The previously issued building permits were also amended to conform to the new project. For our purposes, further elaboration is unnecessary.

The preamble to the second resolution, No. 1394–75, stated in pertinent part that Bernard Blasenheim Associates proposed to construct the project (Mr. Blasenheim was the president of Garden State), that they intended to apply to the public housing and development authority in the "Department of Community Affairs" for the approval of a cer-

tificate of incorporation for a limited-dividend housing corporation, and that it was necessary for the governing body to certify its approval of the project. The city council found that the project would assist in the clearance, replanning, development or redevelopment of blighted areas in the municipality. The resolution expressed approval of the project and declared the city's intent to exempt the property from taxation, in lieu of which the housing corporation would pay to the city "an annual service charge for municipal services supplied to the housing development * * * not exceeding the tax on the property * * * for the year in which a mortgage on the development is executed * * * or, an amount not exceeding six and twenty-eight hundredths per cent (6.28%) of the annual gross revenues of the development * * * whichever amount is greater."

Plaintiffs' two-count complaint in lieu of prerogative writs assailed the resolutions as having been "on information and belief," drawn and submitted by the corporation's attorney and adopted following the exertion of great pressure and "in reliance on numerous misrepresentations both oral and in writing." It alleged that the resolutions purported to amend the zoning ordinance "in a manner which procedurally violated the Statutes of the State of New Jersey," and to grant variances in a manner contrary to law. The second count, which charged a conspiracy among the corporate and municipal defendants, is not involved on this appeal, as it was dismissed on defendants' motion for summary judgment and plaintiffs have not cross-appealed therefrom.

On cross-motions for summary judgment, apart from the one relating to the second count, plaintiffs' motion was granted. The trial judge's rationale was that under *N. J. S. A.* 55:14B–1 *et seq.* the applicant for the zoning changes and exceptions had to be the Passaic Housing Authority and not Garden State or Bernard Blasenheim Associates; that the project in question was not a work or undertaking by a housing authority but by a private corporation or association, and that since the circumstances of the case did not come

within that statute, the city council could not waive the zoning regulations by resolution.

Defendants contend on this appeal that the resolutions represented a "reasonable exercise of municipal authority in coping with a serious shortage of senior citizens housing and are therefore valid and lawful," and that the statutes on the subject should be considered *in pari materia* and cognate to each other. The thrust of their argument is that the city council acted under the authority of the Housing Co-operation Law, *N. J. S. A.* 55:14B-1 *et seq.;* it was a proper public purpose thereunder to aid any housing authority operating within its boundaries, or any housing project therein; for the purpose of aiding and cooperating in the undertaking, construction or operation of housing or redevelopment projects, the public body may, among other things, zone or rezone and make exceptions from building regulations and ordinances; since both the State and Federal Governments were involved in the project, the proposal approved by the city council was a housing project within the meaning of *N. J. S. A.* 55:14B-3(b).

We consider first Resolution No. 1393-75. Defendants' argument misconstrues the narrow issue that is actually involved with respect to this resolution. It is not whether or to what extent a public body may aid or cooperate in the matter of housing or redevelopment projects. Rather, it is whether the public body in this case exceeded the scope of its authority under *N. J. S. A.* 55:14B-4 by rezoning the tract here in question and granting exceptions from the ordinance, and, further, in doing so by resolution. We are satisfied that it did exceed the scope of its authority.

Our Legislature has long recognized the critical shortage in this State of adequate housing, particularly for persons of low or moderate income. To encourage the construction of such housing, thereby alleviating the continuing problem and the concomitant social evils, it has enacted over the years a series of statutes. The ones pertinent to this litigation are the Local Housing Authorities Law, *N. J. S. A.* 55:14A-1

*et seq.;* the Housing Co-operation Law, *N. J. S. A.* 55:14B–1 *et seq.;* the New Jersey Housing Finance Agency Law of 1967, *N. J. S. A.* 55:14J–2 *et seq.,* and the Limited Dividend Non Profit Housing Corporations or Associations Law, *N. J. S. A.* 55:16–1 *et seq.*[1] Although these statutes have a common underlying goal, it does not follow therefrom that all must be considered *in pari materia.* The specific relationship of one to another depends upon the purpose and interplay of the particular statutes involved.

We examine initially the Housing Co-operation Law, since the adoption of the first of the disputed resolutions was purportedly authorized by it. The declared purpose of the law, in part, is

* * * to aid any housing authority or redevelopment agency operating within its boundaries or jurisdiction or any housing project or redevelopment project located therein, because the public body derives immediate benefits and advantages from such an authority, agency or project; * * *[N. J. S. A. 55:14B-2]

"Housing authority" is defined in that statute as the State Housing Authority,[2] or any housing authority created pursuant to the Local Housing Authorities Law [*N. J. S. A.* 55:14A–1 *et seq.*]. *N. J. S. A.* 55:14B–3(a). "Housing project" is defined as "any work or undertaking of a housing authority * * * or any similar work or undertaking of the Federal government." *N. J. S. A.* 55:14B–3(b).

---

[1] Others are the National Defense Housing Projects Law, *N. J. S. A.* 55:14C–1 *et seq.;* the Redevelopment Companies Law, *N. J. S. A.* 55:14D–1 *et seq.;* the Urban Development Law, *N. J. S. A.* 55:14E–1 *et seq.;* the Municipal Housing Law; 55:14F–1 *et seq.;* the Veterans Housing Law, *N. J. S. A.* 55:14G–1 *et seq.;* the State Housing Law of 1949, *N. J. S. A.* 55:14H–1 *et seq.;* the senior citizens Nonprofit Rental Housing Tax Law, *N. J. S. A.* 55:14I–1 *et seq.;* the *Redevelopment Agencies Law,* 40:55C–1 *et seq.*

[2] The State Housing Authority was abolished in 1944 and its functions, powers and duties were transferred to the Department of Economic Development and later to the Department of Conservation and Economic Development. *N. J. S. A.* 13:1B–6, 52:27C–5.

There are many ways in which a public body is authorized to aid and cooperate in the planning, undertaking, construction or operation of housing or redevelopment projects located within its area, most of which are enumerated in *N. J. S. A.* 55:14B–4. The exercise of those powers may be authorized

\* \* \* by resolution of the governing body of such public body adopted by a majority of the members of its governing body present at a meeting at which such resolution is introduced. Such a resolution or resolutions shall take effect immediately and need not be laid over or published or posted. [*N. J. S. A.* 55:14B–7]

We are concerned here specifically with the resolution purporting to rezone the tract on which the housing project is proposed to be constructed and to grant exceptions from the requirements of the local zoning ordinance, ostensibly by virtue of the authority contained in subparagraph (d) of *N. J. S. A.* 55:14B–4, under which the public body may [p]lan or replan, zone or rezone any part of such public body; make exceptions from building regulations and ordinances and change its map; \* \* \*. It is not disputed that this provision enables the public body by resolution in an appropriate case to rezone or grant that which is tantamount to variances from its zoning ordinance, as well as exceptions from other applicable ordinances and regulations, and that the intervention of the local board of adjustment or planning board, as the case may be, is not required. *Cf. Fischer v. Brick Tp. Mayor and Council,* 109 *N. J. Super.* 50, 55–56 (App. Div. 1970), certif. den. 56 *N. J.* 98 (1970).

There is no doubt that *N. J. S. A.* 55:14B–1 *et seq.* must be read *in pari materia* with the Local Housing Authorities Law *N. J. S. A.* 55:14A–1 *et seq.*, and also, by reason of a subsequent amendment, with the Redevelopment Agencies Law, *N. J. S. A.* 40:55C–1 *et seq.*[3] It is evident from the con-

---

[3]The Redevelopment Agencies Law, in turn, is read *in pari materia* with the Redevelopment Companies Law, *N. J. S. A.* 55:14D–1, and

temporaneous adoption of the Local Housing Authorities Law and the Housing Co-operation Law (respectively, *L.* 1938, *c.* 19 and *L.* 1938, *c.* 20) that the Legislature envisaged "effective cooperation between a local housing authority and the municipality that had brought it to life." *Paterson v. Paterson Housing Auth.,* 96 *N. J. Super.* 394, 399 (Law Div. 1967).

The question requiring resolution is whether defendants' housing project constituted a "work or undertaking of a housing authority pursuant to the local housing authorities law." *N. J. S. A.* 55:14B–3(b). Defendants' concept is that it did because both the State and Federal Governments were involved. But this is not the test. *N. J. S. A.* 55:14A–3(i) defines a housing project of an Authority to mean any work or undertaking

> * * * (1) to demolish, clear or remove buildings from any slum area; * * * (2) to provide decent, safe and sanitary urban or rural dwellings; apartments or other living accommodations for persons of low income; * * * or (3) to accomplish a combination of the foregoing. The term "housing project" also may be applied to the planning of the buildings and improvements, the acquisition of property, the demolition of existing structures, the construction, reconstruction, alteration and repair of the improvements and all other work in connection therewith; * * * *.

A housing authority is empowered under *N. J. S. A.* 55:14A–7, among other things:

> (b) * * * to prepare, carry out, acquire, lease and operate housing projects; to provide for the construction, reconstruction, improvement, alteration or repair of any housing project or any part thereof.
>
> * * * * * * * *
>
> (d) [t]o lease or rent any dwellings, houses, accommodations, lands, buildings, structures or facilities embraced in any housing project and * * * to establish and revise the rents or charges therefor; to own, hold and improve real or personal property; * * *.
>
> * * * * * * * *

the Local Housing Authorities Law. See *Paterson v. Paterson Housing Auth.,* 96 *N. J. Super.* 394, 407–408 (Law Div. 1967).

In the case before us the applicant for the relief contained in the challenged resolution was Garden State. The construction of the project was to be undertaken by a limited-dividend housing corporation or association to be organized by Bernard Blasenheim under the provisions of *N. J. S. A.* 55:16–1 *et seq.* Such corporation or association may be formed to serve a public purpose by providing "decent, safe, and sanitary dwellings for families in need of housing" *N. J. S. A.* 55:16–3(6). Corporate stockholders or association members may not receive in repayment of their investment any sums in excess of the face value of the investment plus cumulative dividends at a rate not to exceed 8% per annum. The formation of such corporation or association, and any project to be undertaken by it, is subject to the approval of the public housing and development authority in the Department of Conservation and Economic Development. *N. J. S. A.* 55:16–4, 55:16–6, 55:16–9.1, 55:16–12.

The record discloses that the project was to be financed by the New Jersey Housing Finance Agency, which apparently had given at least preliminary approval to the plans and specification.

We find nothing in the Housing Co-operation Law, nor, indeed, in the Limited-Dividend Nonprofit Housing Corporations or Associations Law, which supports defendants' concept that a public body may grant them necessary zoning exceptions under *N. J. S. A.* 55:14B–4(d) and 7. It is crystal clear to us that a project undertaken by a limited-dividend housing corporation or association, without more, is not a housing or redevelopment project as defined in either the Housing Co-operation Law or the Local Housing Authorities Law. We do not agree with defendants' assertion that the entire legislative scheme respecting public housing must be considered *in pari materia* with the Housing Co-operation Law. We are satisfied that the benefits of this statute, and particularly § 5 thereof (*N. J. S. A.* 55:14B–4), were intended exclusively for housing authority and redevelopment projects as defined in the Housing Co-operation Law

and the Local Housing Authorities Law. If the Legislature had intended the Housing Co-operation Law to apply to any public housing project, irrespective of the enabling statute, it could easily have done so.

Defendants seek to bring their project within the Housing Co-operation Law by pointing to the apparent intention of the Passaic Housing Authority to operate the project upon its completion. They rely in this respect on the unreported Law Division case of *Deal Gardens, Inc. v. Green,* (Docket L–19845–71 P.W.), which was affirmed by the Appellate Division in an unreported opinion. Certification was denied by the Supreme Court. 63 *N. J.* 246 (1973). But the facts of that case, as disclosed in the brief, are clearly distinguishable. There the purchaser of a hotel building in Asbury Park obtained a building permit to convert the building into a number of apartment units. The Asbury Park Housing Authority entered into a lease with the purchaser for approximately 100 units of the building to provide low-cost housing for senior citizens, with rent subsidies to be paid by the Federal Government through HUD. The litigation was instituted by property owners in the vicinity of the project to annul a resolution adopted by the Mayor and Council of Asbury Park, purportedly pursuant to *N. J. S. A.* 55:14B–4(d) and 7, permitting the structure to be used as a multi-family dwelling with no off-street parking or loading facilities, and to set aside the building permit. In sustaining the resolution the trial judge ruled that since the Housing Authority had leased the premises, the project was an undertaking of the Authority within the intendment of *N. J. S. A.* 55:14A–1 *et seq.*

We find no fault with the result in the cited case. A housing authority is specifically empowered, among other things, to lease or rent "any dwellings, houses, accommodations, lands, buildings, structures or facilities embraced in any housing project." *N. J. S. A.* 55:14A–7(d). It is not clear from the record in that case whether the appli-

cation to the governing body for the desired relief had been made by the owner or by the housing authority, or jointly. However, we are not called upon in the matter under review to decide whether, in the case of a housing project which qualifies as an undertaking of the housing authority, only the authority, and no one else involved in the project, such as owner, builder or lessor, may seek zoning relief from the public body under *N. J. S. A.* 55:14B-4(d), and we express no opinion thereon.

Here we have, at best, no more than an expression by the Passaic Housing Authority to Bernard Blasenheim Associates of its readiness to take over the management and operation of the project "as soon as the building has been completed and approved by the Housing Finance Agency of the State of New Jersey and H.U.D." It is to be noted, moreover, that the Authority carefully emphasized that "agreements by the Housing Authority are to manage and operate senior citizens projects" and "[n]o leases are permitted."

A housing authority is undeniably authorized to operate housing projects. See *N. J. S. A.* 55:14A-7(b). Furthermore, under HUD regulations an owner of a project eligible for housing assistance payments may contract with any private *or public entity* for the management and maintenance of the project. See 40 *Fed.Reg.* § 883, 215, *p.* 16, 943 (April 15, 1975).

We need not resolve at this time whether an agreement by a housing authority to operate and manage a housing project would suffice to constitute the project an undertaking of the authority within the meaning of *N. J. S. A.* 55:14A-3(i) and, particularly, 55:14B-3(b). Even if it did, we are nevertheless convinced that the project here cannot in any event be considered such an undertaking merely on the basis of an indication by the housing authority of its intent to enter into an agreement at some future date to operate and manage the project.

We therefore hold that on the facts here present the Passaic City Council could not legally adopt Resolution No. 1393–75. The issue being one of law alone, there was no genuine issue as to any material fact; consequently, the trial judge correctly granted the motion for summary judgment insofar as it related to Resolution No. 1393–75. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N. J.* 67, 74 (1954).

We turn now to the second resolution, No. 1394–75, which does not suffer from the same infirmities as its companion. While the two were undeniably related, and it may well be that neither would have been adopted without the other, this resolution had an entirely different purpose. It pertained to the certificate of incorporation which Bernard Blasenheim intended to file for the creation of a limited-dividend housing corporation under *N. J. S. A.* 55:16–1 *et seq.,* and not to the rezoning of the tract in question or the granting of zoning exceptions.

A limited-dividend housing corporation may be organized to provide, as one of its purposes, "accommodations for families in need of housing" when authorized by the public housing and development authority in the Department of Conservation and Economic Development. *N. J. S. A.* 55: 16–4. Before undertaking any authorized project, the corporation is required to make written application to the authority for approval thereof, which may be made simultaneously with the application for approval of the certificate of incorporation. The application must include

\* \* \* [a] statement by the governing body of the municipality in which the project be located certifying that the project will meet or meets an existing housing need, that it conforms to the requirements of all applicable municipal ordinances, and that the governing body approves of the development or acquisition of the project. \* \* \* [*N. J. S. A.* 55:16–12(1)]

It is also to be noted that the governing body of the municipality concerned may by resolution exempt the project

from all property taxation for the period specified in the statute, receiving, in lieu thereof, payment of an annual service charge for municipal services supplied to the project, in an amount not exceeding the tax on the property for the year in which the undertaking is commenced, or 15% of the gross shelter rents, whichever is greater. See *N. J. S. A.* 55:16–18.

A reading of Resolution No. 1394–75 clearly indicates to us that its purpose was to comply with the relevant requirements of the Limited-Dividend Nonprofit Housing Corporations or Associations Law, a matter distinct from, though of course related to the other resolution. But the trial judge did not separately address himself to the validity of the resolution. He limited himself to a consideration of whether the zoning aspects of the matter came within the purview of the Housing Co-operation Law, and upon his determination that the governing body was not authorized by the statute to grant such relief in this case, he set aside both resolutions. It is evident, however, that the invalidity of the first did not thereby also render the second invalid.

Limited-dividend housing corporation projects are not exempt from the requirements of local zoning ordinances. Where necessary, variances must be obtained from the local board of adjustment. *Cf. DeSimone v. Greater Englewood Housing Corp. No. 1.* 56 *N. J.* 428 (1970). In fact, the aforementioned statement by the governing body must include a certification that the project "conforms to the requirement of all applicable municipal ordinances." *N. J. S. A.* 55:16–12(1).[4]

---

[4]Plaintiffs' counsel informs us that pending this appeal defendants applied to the planning board for site plan approval, and to the board of adjustment for four variances, the nature of which is not disclosed. The site plan was approved but, it appears, the planning board recommended the granting of only two of the requested variances. The board of adjustment recommended approval of all the variances but, we are further informed, the city council voted to

Since the trial judge failed to deal separately with Resolution No. 1394–75, we are constrained to reverse so much of the judgment as pertains to it, and to remand the matter for such further proceedings as may be necessary for a determination of the issue of its validity.

In all other respects, the judgment is affirmed.

We do not retain jurisdiction.

deny them and also voted against a proposed resolution waiving taxation in favor of a stipulated percentage of the gross rental. Defendants thereupon brought an action in lieu of prerogative writs to set aside the denial of the variances by the city council. So far as we know, that action is still pending.